T.C. Memo. 2001-178

UNITED STATES TAX COURT

CHRISTA KARIN MUELLER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3336-95.                        Filed July 19, 2001.

P and H filed a joint return for 1986.  R
determined a deficiency in tax on account of omission
of embezzlement income and gain from liquidation of
corporation, both items attributable to H.  R also
determined a sec. 6661, I.R.C., addition to tax for
substantial understatement of income.  P challenges
deficiency and asks relief from liability under
sec. 6015, I.R.C., as a so-called innocent spouse.

1.  <u>Held</u>:  P and H omitted from income
embezzlement income and gain (in a reduced amount) of
H.

2.  <u>Held</u>, <u>further</u>, P has failed to show error in
the determination of sec. 6661, I.R.C., addition to tax
for substantial understatement of income.

3.  <u>Held</u>, <u>further</u>, P has failed to show
entitlement to relief from liability under sec. 6015,
I.R.C.

Christa Karin Mueller, pro se.

Julius Gonzalez, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge: By notice of deficiency dated December 5, 1994 (the notice), respondent determined deficiencies in, and additions to, petitioner and petitioner's husband's 1986 Federal income tax liability as follows:

With Respect to Husband:

| | | Additions to Tax | | |
|------|------------|-------------------|-------------------|-----------|
| Year | Deficiency | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6661 |
| 1986 | $1,367,888 | $1,023,699 | [1] | $341,233 |

[1] 50 percent of the interest payable under sec. 6601.

With Respect to Petitioner:

| | | Addition to Tax |
|------|------------|-----------------|
| Year | Deficiency | Sec. 6661 |
| 1986 | $1,367,888 | $341,233 |

Petitioner and her husband, Reinhard Mueller (sometimes, husband), made a joint return of income for 1986 (the 1986 return).  The principal adjustments giving rise to respondent's determination of a deficiency in tax are respondent's positive adjustment to gross income on account of three items determined by respondent to have been omitted from gross income: (1) embezzlement income of husband in the amount of $485,177, (2) stock-related gain of husband in the amount of $2,299,920, and (3) stock-related gain of husband in the amount of $5,068.

Respondent has since conceded the third item. We accept that concession, and do not further discuss that item.

By the petition, petitioner assigns error to respondent's determinations but only avers facts supporting the defense that she should be relieved of liability as a so-called innocent spouse under section 6013(e). At trial, the parties agreed that petitioner could amend the petition to raise a claim under section 6015 rather than section 6013(e).[1] We gave leave for such amendment. Since respondent also consented to petitioner's introducing evidence with respect to the two remaining items of gross income, we also deem the petition amended to raise those issues and the addition to tax under section 6661. See Rule 41(b).

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. Petitioner bears the burden of proof. See Rule 142(a).

---

[1] On July 22, 1998, sec. 6015 was enacted, replacing former sec. 6013(e), which was repealed generally as of the same date. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(a), (e)(1), 112 Stat. 734.

## FINDINGS OF FACT

Some facts have been stipulated and are so found. The stipulations of facts filed by the parties, with accompanying exhibits, are incorporated herein by this reference.

Residence

Petitioner resided in Fort Lauderdale, Florida, at the time the petition was filed.

Petitioner

Petitioner was born in Germany. She married Reinhard Mueller in 1956, and the couple have three sons. She is a housewife and has had no training in law, finance, or taxes. She has not been employed outside her home or self-employed for 30 years. She and husband have lived in Fort Lauderdale, Florida, since approximately 1962.

Omni Equities, Inc.

Omni Equities, Inc. (Omni), formerly A.T. Bliss & Co., Inc., was a Massachusetts corporation. After May 2, 1986, husband was president, a director, and the majority shareholder of Omni, owning 6,571,201 of its shares, which was approximately 66 percent of its shares. The second major shareholder in Omni was Depository Trust Co. (DTC), which owned approximately 12 percent of Omni's shares. The remaining 22 percent of Omni's shares were owned by various smaller shareholders. In 1986, Omni's principal

asset was a block of shares in a corporation, MagnaCard, Inc. (MagnaCard).

### Walter Lyall Jacob, Walter L. Jacob & Co., Ltd., Jacob Growth Capital, Ltd.

Walter Lyall Jacob (Jacob) was a securities broker and Scottish lawyer who engaged in business transactions with husband.

Walter L. Jacob & Co., Ltd. (WLJ & Co.) was a brokerage house in London, England, owned by Jacob.

Jacob Growth Capital, Ltd. (JGC), also known as Overseas Growth Capital (OGC), was a Channel Island corporation owned, at least in part, by Jacob.

### Form 8-K

A U.S. Securities and Exchange Commission Form 8-K, Current Report Under Section 13 or 15(d) of the Securities Exchange Act of 1934, dated July 24, 1985 (the Form 8-K), reports various purchases by husband of shares in A.T. Bliss & Co., Inc. (Omni), during July 1985, totaling 2,344,099 shares, for a total price of $421,614.85. The Form 8-K states: "Including the above purchases, Mr. Mueller now owns a total of 3,106,599 shares of Registrant's common stock, or 31% of the 9,877,266 total common shares outstanding."

### Husband's Indebtedness to Omni

Husband was indebted to Omni in the principal amount of $844,635 for the purchase in November 1985 of at least a portion

of his shares in Omni, as evidenced by a promissory note to Omni, due January 30, 1986. Husband satisfied the promissory note with funds borrowed from WLJ & Co.

## March 7 Agreement

By agreement executed March 7, 1986 (the March 7 agreement), Omni and WLJ & Co. agreed that, since Omni was desirous of selling its shares in MagnaCard, and WLJ & Co. was a licensed dealer in securities in England, Omni would appoint WLJ & Co. as its agent to find a purchaser for such shares. The March 7 agreement also provided that WLJ & Co. would receive a commission of 10 percent of the price paid for Omni's MagnaCard shares.

## R. Mueller & Sons, Ltd.

R. Mueller & Sons, Ltd. (RM & Sons) was a British corporation, originally named Stockease, Ltd., which husband acquired as an empty shell. Following husband's acquisition of RM & Sons, he served as president of the corporation. On April 8, 1986, husband sold his 6,571,201 shares in Omni to RM & Sons for $1,232,100.

## Sale of MagnaCard; Disbursement of Proceeds

On April 10, 1986, the board of directors of Omni authorized the liquidation of Omni.

On April 26, 1986, Omni sold 38,860,956 shares of MagnaCard common stock to JGC for $3,600,000. WLJ & Co. served as the brokerage firm in the transaction.

Out of the $3,600,000 proceeds, WLJ & Co. received $360,000 as brokerage commissions, leaving net proceeds of $3,240,000 for distribution to Omni's shareholders.

On April 29, 1986, husband instructed WLJ & Co. to disburse the net proceeds of $3,240,000 as follows: (1) $2,299,920 to the account of RM & Sons and (2) $940,080 by wire transfer to the trust account of Omni's attorneys (the trust account). The aforesaid $940,080 was transferred by wire to the trust account. On May 5, 1986, $940,080 from the trust account was transferred to an account at Meritor Savings (Meritor) in the name of Reinhard Mueller, Trustee for Omni shareholders. On August 19, 1986, $485,177.37 was wired from the Meritor account to WLJ & Co.'s account at Barclays Bank, in London, England.

With respect to the $2,299,920 to be disbursed to the account of RM & Sons, WLJ & Co.'s customer account records show a credit to account number 10051 (account No. 10051), in the name of RM & Sons, on May 3, 1986, in the amount of $2,299,920.

Transactions in Account No. 10051

WLJ & Co.'s records for account No. 10051 show the following pertinent information with respect to transactions during April and May 1986:

| Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|
| April 8 | (Transfer from RM) 6,571,201 shares Omni | -- | -- | -- |
| April 8 | 2 Notes: RM for US $985,000 plus accrued interest | $1,000,243 | -- | ([1]$1,000,243) |
| May 3 | Tfr Omni Securities | -- | $2,299,920 | 1,299,676 |
| May 3 | Bought – US $1,250,000 5x US $250k – 6% Demand Debentures | 1,250,000 | -- | 49,676 |
| May 3 | Additional Interest 8 Apr – 3 May | 5,919 | -- | 43,751 |
| May 3 | Bought – US $ 43,751.47 1x US $43,751.47 6% Demand Deb | 43,751 | -- | -- |

[1] We assume this to be a negative balance, although it is not shown as such in the records for account No. 10051.

Two documents from WLJ & Co. entitled "Contract Notes" (the contract notes) evidence purchases for RM & Sons, account number 10051, of "Demand Debentures". The first such contract note states that RM & Sons bought "US $1,250,000" "5 x US $250,000 5% Demand Debentures" "Trade Date [May 3, 1986]". The second such contract note states that RM & Sons bought "US $43,751.47" "5% Demand Debentures" "Trade Date [May 3, 1986]".

DTC Suit

DTC was due a liquidating distribution from Omni in the amount of $496,437.50 (the DTC liquidating distribution), which it never received.

On or about October 28, 1986, DTC filed suit in Polk County, Florida (the DTC suit), for payment of the DTC liquidating distribution, naming, as defendants (1) Omni, and (2) husband in his individual capacity, as director of Omni, and as trustee for the shareholders of Omni. A complaint (the complaint) was served on husband by substitute service on petitioner at the family residence on October 30, 1986. The complaint alleges, among other things, that husband had:

> surreptitiously removed from the Meritor Account and placed them in personal accounts or accounts over which he has control, and has thereby converted to his own personal use and benefit funds of DTC which were entrusted to him for safekeeping and distribution. Mueller has further caused assets of Omni which should have been used for payment of liquidating dividends to shareholders to be diverted to himself, his business associates, or companies which he controls.

On June 1, 1989, the court in the DTC suit entered summary final judgment in DTC's favor against Omni and husband in the amount of $496,437.50. Eventually, DTC recovered $10,259.50 of the dividend by garnishing an Omni account, leaving a balance due of $486,178.

The 1986 Return

On the 1986 return, petitioner and husband reported the April 8, 1986, sale by husband of his 6,571,201 shares in Omni to RM & Sons. They reported a sales price of $1,232,100 and a cost basis of $1,388,125, for a loss of $156,025. They did not claim the loss, however, stating: "loss of $156,025 not deducted as the sale was to a related entity." On September 20, 1988, petitioner and husband made an amended return for 1986 (the amended return). On neither the 1986 return nor the amended return did they report any amount with respect to the DTC liquidating distribution.

Husband's Criminal Conviction

On or about October 6, 1994, husband was convicted (the 1994 conviction) of violating sections 7201 ("Attempt to evade or defeat tax.") and 7206 ("Fraud and false statements."). Among the counts on which he was convicted were counts charging him with (1) tax evasion on account of his failure to report and pay tax for 1986 on income resulting to him from his conversion of the DTC liquidating distribution, and (2) willfully making false returns of income for 1986 by, among other things, failing to report a liquidating dividend from Omni of approximately $2.2 million.

On December 21, 1994, with respect to the 1994 conviction, husband was sentenced to 51 months in prison, plus 3 years

probation. The sentencing judge provided that husband could reduce the length of his sentence by making restitution. The sentencing judge rejected husband's claim of indigence: "[T]he court feels confident that you have either secreted funds or you have placed funds in trust to other family members so that funds are available."

Christa Karin Mueller Trust

The Christa Karin Mueller Trust (the trust) was established by agreement dated April 30, 1989, between petitioner, as grantor, and husband's brothers, as trustees. Petitioner is the sole vested beneficiary under the trust. The trust is governed by the laws of Germany.

The trust was funded with stocks and bonds with a cost basis of $1,057,852.09 and an approximate fair market value at the time of transfer of $1,150,509. The stocks and bonds were transferred from accounts with Prudential-Bache and Shearson Lehman Hutton Inc., held in petitioner's name alone. The trust funds are managed by Dresdner Bank located in Luxembourg.

Petitioner received at least one distribution from the trust in the amount of $13,700 in 1990, and approximately $100,000 in distributions in 1991 through 1993. On or about July 12, 1994, petitioner obtained $450,000 by wire from the trust, which funds were used to post cash bail (the cash bail) for husband in the case leading to the 1994 conviction.

Gordon Case

Katherine and Richard Gordon (the Gordons) were shareholders in Omni and made other investments in entities closely associated with husband. In 1985, the Gordons brought suit in State court to recover losses incurred through the fraudulent activities of husband, Omni, and other entities controlled by him. Judgments from these suits (the State court judgments) exceeded $1 million.

In 1994, the Gordons filed suit in the U.S. District Court for the Middle District of Florida (the District Court suit and the District Court, respectively) to execute on the $450,000 cash bail. Petitioner was a defendant in the District Court suit. Among the findings made by the District Court were the following:

> "The * * * [1994 conviction] involved the same facts
> and circumstances for which the Plaintiffs obtained
> their judgment[s] [the state court judgments], i.e.,
> failing to pay taxes on the money Mr. Mueller stole
> from investors such as the Plaintiffs. * * * The
> Trust [trust] is funded by money fraudulently conveyed
> to it by Reinhard and Christa-Karin Mueller."

The District Court held, among other things, that the cash bail was subject to execution by the Gordons.

OPINION

I. Deficiency in Tax

A. Introduction

We must first determine whether respondent erred by including in petitioner and husband's gross income embezzlement

income of $485,177 and stock-related gain of $2,299,920, both items attributable to husband. We conclude that respondent erred only in that the stock-related gain was $911,795 rather than $2,299,920. Petitioner and husband made a joint return of income for 1986 and, thus, barring relief under section 6015, petitioner is jointly and severally liable for any deficiency in tax resulting from respondent's adjustments. See sec. 6013(d)(3).

B. Embezzlement Income

Husband was convicted of tax evasion on account of his failure to report and pay tax for 1986 on income resulting to him from his conversion of the DTC liquidating distribution. DTC had obtained summary judgment against husband in the amount of $496,437.50, which, after garnishment in the amount of $10,259.50, left a balance due of $486,178. There is sufficient evidence for us to find that husband had unreported income in the amount of $485,177 on account of his conversion of the DTC liquidating distribution in 1986.[2] See James v. United States, 366 U.S. 213, 220 (1961) (embezzled funds constitute gross income to embezzler in year funds were misappropriated).

---

[2] Respondent's adjustment for embezzlement income is based on the Aug. 19, 1986, withdrawal of $485,177.37 from the Meritor account.

C.  Liquidating Dividend

    1.  Positions of the Parties

Respondent has determined that husband failed to report gain of $2,299,920 realized by him in 1986 on account of the distribution by Omni to him of a portion of the proceeds from the sale by Omni of its shares of MagnaCard (the MagnaCard sale). Petitioner does not dispute that, in 1986, husband was owed a $2,299,920 liquidating dividend from Omni on account of the MagnaCard sale.  Petitioner argues as follows:  In 1986, husband owed to WLJ & Co. (the broker on the MagnaCard sale) $985,000, plus interest (for a total of $1,006,163), which total WLJ & Co. offset against its obligation to disburse to him his portion of the proceeds of the MagnaCard sale.  WLJ & Co. discharged the remainder of its obligation to husband by issuing to him its debentures in the amounts of $1,250,000 and $43,751 (the WLJ & Co. debentures).  No payments were made on the WLJ & Co. debentures in 1986.  WLJ & Co. eventually defaulted on the debentures, and husband received only payments and property worth $250,000.  The cost to husband of his Omni stock was $1,388,125.[3]

---

[3]  On brief, petitioner describes RM & Sons as husband's "alter ego" and treats husband and RM & Sons "as one and the same".  We accept that RM & Sons' separate identity is to be disregarded, and, therefore, we shall disregard husband's April 8, 1986 sale of 6,571,201 shares of Omni to RM & Sons for $1,232,100.  We shall treat husband as owning directly such shares of Omni.  Further references to RM & Sons are to be understood as references to husband.

Petitioner concludes that husband realized no gain in 1986 with respect to his Omni stock.

    2.  <u>Sections 331 and 1001</u>

Section 331(a) provides that amounts received by a shareholder in a distribution in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock. In pertinent part, section 1001(a) provides that gain from the sale or other disposition of property is the excess of the amount realized therefrom over the taxpayer's adjusted basis in the property, and loss is the excess of adjusted basis over amount realized. In pertinent part, section 1001(b) provides: "The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received." Section 1001(c) provides that, except as otherwise provided, the entire amount of the gain on the sale or exchange of property shall be recognized.

As we understand petitioner's argument, it is not that there was no sale by Omni of its MagnaCard shares in 1986 or that there was no liquidating distribution to husband in 1986; it is that, in 1986, husband received only $1,006,163, in the form of debt relief from WLJ & Co.[4] On that basis, we must determine

---

[4] On brief, petitioner states:

(continued...)

husband's adjusted basis in his Omni shares, his amount realized, and the amount and timing of any gain or loss.

### 3. Adjusted Basis

Respondent has allowed petitioner no adjusted basis in husband's Omni shares. We have found that husband was indebted to Omni in the principal amount of $844,635 for the purchase of at least a portion of his shares in Omni. We make that finding based on a note, dated November 20, 1985, from husband to Omni, which is an exhibit to the stipulation of facts agreed to by the parties. We have also found that, by the Form 8-K, A.T. Bliss & Co., Inc. (Omni), reported husband's purchase of 2,344,099 shares during July 1985 for $421,614.85. Those two purchases account for most, but not all, of husband's shares in Omni. We find that

---

[4](...continued)
In summary of the foregoing transactions, Petitioner's husband Reinhard Mueller received the following proceeds as his liquidating dividend on the OMNI shares:

| DATE | ACTION | AMOUNT |
|------|--------|--------|
| May 1986: | Margin loan plus interest offset by the broker WLJ Co. | $1,006,163 |
| June 1987: | Settlement received from Mr. Jacob personally for defaulted debentures. | $100,000 |
| November 1987: | Remaining claim under the debentures exchanged for a 15% interest in a new company, which was then sold in 1988 for | $150,000 |
| TOTAL proceeds from the OMNI dividend: | | $1,256,163 |

husband's total adjusted basis in his Omni shares was $1,388,125, based on these two findings and on the amount shown by petitioner and husband on the 1986 return as husband's basis in his Omni shares.

### 4. Amount Realized

On April 29, 1986, husband instructed WLJ & Co. to disburse $2,299,920 of the net proceeds from Omni's sale of MagnaCard to the account of RM & Sons. On May 3, 1986, WLJ & Co. credited RM & Sons' account with that amount. On April 8, 1986, WLJ & Co. debited RM & Sons' account $1,000,243 to repay an indebtedness of RM & Sons to WLJ & Co., and, on May 3, 1986, WLJ & Co. credited RM & Sons account $5,919 to pay interest, and a total of $1,293,752 to purchase demand debentures (the demand debentures).[5] Petitioner concedes that the sum of the first two amounts, $1,006,162, constitutes an amount realized by husband. She denies that the third amount does. Petitioner argues that husband had agreed to accept the demand debentures as a condition of the sale of the Omni shares:

> because WLJCo. was unwilling to deplete its working
> capital for the sake of OMNI. * * * Reinhard Mueller
> had also agreed that the issuance of the debentures
> would satisfy WLJCo's obligation to OMNI for the
> purchase of the MagnaCard shares and that thereafter

---

[5] We assume that the 6-percent demand debentures referred to in WLJ & Co.'s customer account record for account number 10051 and the 5-percent demand debentures referred to in the contract notes are the same debentures. We cannot, however, explain the discrepancy in description.

> Mueller would look only to WLJCo. and Mr. Jacob
> personally for payment of the balance due him under the
> liquidating dividend.

With respect to husband's receipt of the demand debentures,
petitioner argues: "As a matter of law, the debentures did not
constitute taxable income to a cash basis taxpayer until paid.
(I.R.C. Section 453(h)(1)(A))."

The parties have stipulated: "On April 26, 1986, Omni sold
38,860,956 shares of MagnaCard common stock to JGC in England for
$3,600,000.00. WLJ & Co. served as the brokerage firm in the
transaction." It is unclear whether petitioner is arguing that
WLJ & Co., rather than JGC, should be considered the purchaser of
the 38,860,956 MagnaCard shares from Omni. In neither event,
however, did husband's receipt of the demand debentures bring
into play installment reporting under section 453. Section
453(a) provides that, generally, income from an installment sale
shall be taken into account under the installment method of
accounting. In pertinent part, section 453(b)(1) defines an
installment sale as "a disposition of property where at least 1
payment is to be received after the close of the taxable year in
which the disposition occurs." In pertinent part, section
453(f)(4) provides: "Receipt of a bond or other evidence of
indebtedness which--(A) is payable on demand * * * shall be
treated as receipt of payment." Section 15a.453-1(e)(1)(i),
Temporary Income Tax Regs., 46 Fed. Reg. 10718 (Feb. 4, 1981),

provides: "A bond or other evidence of indebtedness * * * issued by any person and payable on demand shall be treated as a payment in the year received, not as installment obligations payable in future years." (Emphasis added.) Section 15a.453-(1)(e)(3), Temporary Income Tax Regs., 46 Fed. Reg. 10719 (Feb. 4, 1981), provides that an obligation is treated as payable on demand only if the obligation is treated as payable on demand under applicable State or local law. See also Champy v. Commissioner, T.C. Memo. 1994-355. Petitioner has not overcome the inference to be drawn from WLJ & Co.'s customer account records for account number 10051 and the contract notes that the demand debentures (evidences of indebtedness) were, indeed, payable on demand. She has failed to specify the applicable law or to prove that the debentures would not be considered demand debentures under applicable law. As a result, we find that the demand debentures were evidences of indebtedness payable on demand. There were, therefore, no payments after the year of sale with respect to Omni's sale of the MagnaCard stock, and the installment method of accounting is unavailable.

On May 3, 1986, $2,299,920 was credited to RM & Sons' account at WLJ & Co. with respect to the sale by Omni of the MagnaCard stock. Of that sum, $1,006,163 was used to repay indebtedness and the remainder purchased the demand debentures.

Petitioner has failed to show that the amount realized by husband was less than $2,299,920, and we find that it was $2,299,920.

### 5. Gain

Husband realized a gain of $911,795 ($911,795 = $2,299,920 - 1,388,125) on receipt of the liquidating dividend from Omni. That gain was recognized to husband in 1986. See sec. 1001(c).

## II. Section 6661

Respondent determined that petitioner and husband substantially understated their income tax liability for 1986 and petitioner is liable for the addition to tax provided for in section 6661. The addition to tax for a substantial understatement of income tax for a taxable year equals 25 percent of the amount of any underpayment attributable to such substantial understatement. See sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498, 500-503 (1988). There is a substantial understatement of income tax for a taxable year if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. See sec. 6661(b)(1)(A). Although petitioner bears the burden of proof, she has submitted no evidence nor has she made any argument as to why section 6661 should not apply. Accordingly, we sustain respondent's determination of an addition to tax for a substantial understatement to the extent that the

redetermined deficiency continues to qualify as a substantial understatement under section 6661(b)(1)(A).

III.  Relief From Joint and Several Liability

Petitioner seeks relief from the joint and several liability imposed by section 6013(d)(3).  Section 6015(a) permits an individual who has filed a joint return to elect to seek relief from joint and several liability provided the taxpayer meets the requirements of section 6015(b).  The pertinent requirements of section 6015(b) that must be met are as follows:

   (A) a joint return has been made for a taxable year;

   (B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

   (C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement; [and]

   (D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; * * *

An individual meeting the requirements of section 6015(b) is relieved of liability for tax (including interest, penalties, and other amounts) for the taxable year in question to the extent the liability is attributable to the understatement described in section 6015(b).

Respondent concedes that petitioner satisfies the first two requirements but argues that she does not satisfy the last two:

"The petitioner cannot be relieved from liability under I.R.C. § 6015 because she had reason to know of the understatements on the 1986 joint income tax return; and because she significantly benefitted from the unreported income, it would not be inequitable to hold her jointly and severally liable." Petitioner argues that she satisfies all four section 6015(b) requirements.

We need not decide whether petitioner satisfies the third (section 6015(b)(1)(C)), lack-of-knowledge requirement, since, taking into account all of the facts and circumstances, as required by section 6015(b)(1)(D), we find that it would not be inequitable to hold her liable for the deficiency in tax we here redetermine. The establishment and funding of the trust plays a large role in our reaching that conclusion. The trust was established by agreement dated April 30, 1989, and petitioner is the sole beneficiary. Stocks and bonds with an approximate fair market value of $1,150,509 were transferred to the trust. In 1994, husband was convicted of tax evasion for failing to report his conversion of the DTC liquidating dividend and willfully making false returns for 1986 by failing to report a liquidating dividend from Omni of approximately $2.2 million. The sentencing judge stated: "[T]he court feels confident that you have either secreted funds or you have placed funds in trust to other family members so that funds are available." In the District Court

suit, involving the Gordons, the judge found, among other things: "The * * * [1994 conviction] involved the same facts and circumstances for which the Plaintiffs obtained their judgment[s], i.e., failing to pay taxes on the money Mr. Mueller stole from investors such as the plaintiffs. * * * The Trust [trust] is funded by money fraudulently conveyed to it by Reinhard and Christa-Karin Mueller." We think those statements are probative of the fact that the trust was funded with husband's unreported items of income for 1986.

Petitioner testified as follows: The stocks and bonds transferred to the trust were her "savings". Her savings were the result of her frugality as a housewife. Her savings were money she has set aside for retirement. At the time the trust was established, she had "a few" stocks and bonds. She does not know the difference between a share of stock and a bond, and she could not remember the quantity or name of any of the stocks and bonds that funded the trust. Her husband had put the money into the trust, and she did not know how much money went into the trust. She did not keep track of the value of the trust, and, at the time of trial, did not know the trust's value. She did not receive accountings from the trustees.

Petitioner did not comply with a subpoena for documents relating to the trust. Moreover, we found petitioner's testimony regarding the establishment and operation of the trust to be

contradictory and evasive. We also note that, in the District Court suit, involving the Gordons, the judge found petitioner to be uncooperative and responsible for delaying the course of the lawsuit.

Petitioner's lack of knowledge and apparent lack of concern with respect to the operation of the trust, which contained what she claimed to be her life savings of over $1 million, gives us no confidence in her claim that the trust was funded with her and not husband's funds. Petitioner has failed to rebut the inference from the statements and findings of the State Court and District Court that the trust was funded with the embezzlement income and liquidating dividend that husband failed to report for 1986, and we so find. Indeed, the District Court explicitly found that petitioner was complicit in the fraudulent conveyance of funds to the trust, and we find likewise. Whether all of the 1986 unreported income went to the trust or not is not critical. Certainly, because of the conveyance of stocks and bonds with an approximate fair market value of $1,150,509 to the trust, petitioner significantly benefited from husband's unreported income of approximately $1.4 million, and that is enough for us to determine that it is not inequitable to hold her liable for the deficiency in tax. See sec. 1.6013-5(b), Income Tax Regs. (interpreting the predecessor of section 6015(b)(1)(D)).

Petitioner has provided no grounds for relief under either section 6015(c) or (f).

Decision will be entered under Rule 155.